UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE,

Plaintiff,

v.

SEMPERVIRENS MENTAL HEALTH FACILITY, et al.,

Defendants.

Case No. 14-cv-00816-JD

**ORDER GRANTING SUMMARY JUDGMENT**

Re: Dkt. No. 48

This is a civil rights action arising out of plaintiff John Doe's attempt to purchase a rifle in 2012. Plaintiff alleges that he was unable to buy the firearm because a county mental health facility had incorrectly reported a prior treatment stay to the California Department of Justice ("DOJ"). Plaintiff also alleges that when he tried to fix the reporting error, the hospital and its employees refused to do what was needed, in a conscious and deliberate effort to deprive him of his constitutional right under the Second Amendment to keep and bear arms.

The Court previously granted plaintiff the right to proceed pseudonymously, Dkt. No. 28, and plaintiff voluntarily dismissed Kamala D. Harris, who had been sued in her official capacity as the Attorney General for the State of California and the head of the DOJ. Dkt. No. 44. The remaining defendants are Sempervirens Mental Health Facility ("Sempervirens"), which is an agency of the County of Humboldt, and two of its administrator employees: Drs. Asha George and Chris Starets-Foote. All three defendants ask the Court to grant summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court grants the motion.

**BACKGROUND**

As the undisputed facts establish, plaintiff was hospitalized at Sempervirens for a brief period in mid-1999. Dkt. No. 1 ¶¶ 4-5. Sempervirens reported to the California DOJ that plaintiff was hospitalized involuntarily under California Welfare & Institutions Code Section 5250. *Id.* ¶ 5.

United States District Court
Northern District of California

That section permits "[t]he professional staff of the agency or facility providing evaluation services" to certify a person "for not more than 14 days of intensive treatment related to the mental health disorder or impairment by chronic alcoholism," if, among other things, the staff "has analyzed the person's condition and has found the person is, as a result of a mental health disorder or impairment by chronic alcoholism, a danger to others, or to himself or herself, or gravely disabled." Cal. Welfare & Institutions Code § 5250(a). A person so certified has the right to receive a "certification review hearing, to be held within four days of the date on which the person is certified . . . , to determine whether or not probable cause exists to detain the person for intensive treatment related to the mental disorder or impairment by chronic alcoholism." *Id.* § 5254. Plaintiff never received a certification review hearing.

Plaintiff contends that his hospital stay should have been reported under Section 5150 instead of Section 5250. Section 5150 permits peace officers, persons designated by a county and others to, "upon probable cause, take, or cause to be taken, [a] person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county . . . ." The parties do not dispute that, as a matter of federal law, persons who are hospitalized under Section 5150 are subject to a 5-year ban on the purchase of firearms, while those who are hospitalized under Section 5250 face a lifetime ban. Dkt. No. 1 ¶¶ 4-5.

Plaintiff says that he first discovered the Section 5250 reporting error when he was unable to complete a purchase of a small caliber ".22 rifle" in early 2012. *Id.* ¶¶ 9-10. He was denied the purchase on the ground of a purported lifetime ban. He then engaged in efforts to get Sempervirens to correct his record with the DOJ, beginning with a call to Sempervirens' records department. In his own words, plaintiff states that he was "surprised and happy" when Sempervirens promptly and on its own initiative faxed to the DOJ a correction form, "indicating plaintiff was hospitalized in 1999 under Section 5150" and not Section 5250. *Id.* ¶¶ 10-13; Dkt. No. 52 ¶ 13. Plaintiff was later informed, however, that the DOJ had requested "a follow-up letter from Sempervirens' director, Dr. George, explaining the 12-year lapse in correcting the mistaken 1999 report" before it would actually correct plaintiff's record. Dkt. No. 1

¶ 14. Plaintiff had several phone calls with Dr. George, Dr. Starets-Foote and other Sempervirens personnel, some of which took on an angry and contentious tone. In one call, Dr. Starets-Foote informed plaintiff that "Sempervirens would 'never' provide the requested letter to the DOJ," *id*. ¶ 16, and that she "does not care about" plaintiff's constitutional rights. Dkt. No. 52 ¶ 44.

It is undisputed, however, that in May 2012, Dr. George did send a letter to the DOJ which stated:

> Based upon review of the existing records, [plaintiff] was placed on a 5250 [on] June 26, 1999. He was placed on a voluntary status [on] June 29, 1999 and subsequently discharged on July 1, 1999. The notice of Welfare Institution Code 5250, 14 day hold, was sent to Department of Justice on June 26, 1999.
>
> Please note [plaintiff] did not have a Certification Review Hearing. If you have any questions, I can be reached at . . . .

Dkt. No. 48-1, Ex. C. The DOJ apparently did not consider this letter to be sufficient and did not correct plaintiff's record after receiving it. Dkt. No. 1 ¶ 24.

On August 4, 2014, about six months after plaintiff filed this lawsuit, Dr. George sent another letter to the DOJ. This second letter stated:

> Please allow this letter to provide further clarification as to the reporting on June 26, 1999, of a Welfare and Institution Code § 5250 hold of [plaintiff]. [Plaintiff] was held on a Welfare and Institution Code § 5150 hold commencing June 23, 1999, and this was properly reported on that date.
>
> Staff certified [plaintiff] for a further hold on June 26, 1999, pursuant to Welfare and Institution Code § 5250 and, as was the understanding of facility staff as to the practice at that time, a report was made of this. [Plaintiff] agreed to voluntary commitment prior to expiration of the four day time frame within which a hearing must be held and thus, no certification hearing occurred. It is my understanding under current guidelines, [plaintiff] would not be classified under Welfare and Institution Code § 5250 for reporting purposes because no hearing occurred and the period of time that he was held pursuant to Welfare and Institutions Code § 5250, based on staff certification would not be reportable.
>
> In other words, the hospitalization commencing June 26, 1999, would no longer be reportable or classified as pursuant to Welfare and Institution Code § 5250 because no certification hearing was held.
>
> Please advise if anything further is needed to correct your records.

Dkt. No. 48-1, Ex. D. Plaintiff acknowledges the sufficiency of this second letter and expressly

concedes that "defendants have finally, in late 2014, provided the California Department of Justice what it required of the Defendants to correct Sempervirens' error(s)." Dkt. No. 50 at 4.

Plaintiff's complaint alleges these four claims for relief: (1) for violations of 42 U.S.C. § 1983; (2) for declaratory relief under California Code of Civil Procedure § 1060; (3) for equitable relief under California law; and (4) for a writ of mandamus under California law. Dkt. No. 1 ¶¶ 38-59. Defendants seek summary judgment on all four claims, asserting that "there is no triable issue of material fact as to any claim against any defendant." Dkt. No. 48 at 1.

**DISCUSSION**

Defendants bring their motion under Rule 56 of the Federal Rules of Civil Procedure. Dkt. No. 48. Under that rule, a "party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought. The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under the well-established case law governing summary judgment motions, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict" for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it could affect the outcome of the suit under the governing law. *Id.* at 248-49. To determine whether a genuine dispute as to any material fact exists, a court must view the evidence in the light most favorable to the non-moving party and draw "all justifiable inferences" in that party's favor. *Id.* at 255. A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The moving party must initially establish the absence of a genuine issue of material fact, which it can do by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. It is then the nonmoving party's burden to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 323-34. "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). Only genuine disputes -- where the evidence is such that a reasonable

United States District Court
Northern District of California

jury could return a verdict for the nonmoving party -- over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson*, 477 U.S. at 248.

In determining whether to grant or deny summary judgment, it is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quotations omitted). Rather, it is entitled to rely on the nonmoving party to "identify with reasonable particularity the evidence that precludes summary judgment." *Id.*

**I. SECTION 1983 CLAIM**

Plaintiff's primary claim -- and his only federal claim -- is his first claim for relief for violations of 42 U.S.C. § 1983. That section provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." In our Circuit, "[t]o sustain an action under § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Wood v. Ostrander*, 851 F.2d 1212, 1214 (9th Cir. 1988). While a municipality is a "person" for § 1983 purposes under the landmark holding in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978), it cannot be held liable solely because it employed a tortfeasor. Rather, a municipality may only be held liable "when execution of a government's policy or custom . . . inflicts the injury." *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 452 (2010) (internal quotation marks and emphasis omitted).

Significantly, "the Supreme Court has held that mere negligence or lack of due care by state officials does not trigger the protections of the Fourteenth Amendment and therefore does not state a claim under § 1983." *Wood*, 851 F.2d at 1214 (citing *Daniels v. Williams*, 474 U.S. 327, 330-32 (1986) and *Davidson v. Cannon*, 474 U.S. 344, 347 (1986)). "[G]ross negligence, recklessness, or 'deliberate indifference,'" on the other hand, have been found to support a § 1983

claim. *Id*. (citing, inter alia, *Taylor v. Ledbetter*, 818 F.2d 791, 793, 795-97 (11th Cir. 1987) (en banc)).

Defendants contend that there is no constitutional violation because neither Dr. George nor Dr. Starets-Foote "acted with intent nor deliberate indifference to deprive plaintiff of any constitutional right." Dkt. No. 48 at 9. Plaintiff responds that, when viewing the facts in the light most favorable to him, "there can be no doubt that the deliberate indifference of the two named defendants deprived plaintiff on a continuing basis of his right to keep and bear arms." Dkt. No. 50 at 13.

But even viewing the evidence in favor of the non-moving plaintiff, as the Court must, the record shows that Drs. George and Starets-Foote acted negligently at worst; they did not act with deliberate indifference. The critical undisputed fact is that Dr. George sent a letter to the DOJ in May 2012 that is not distinguishable in any material way from the letter she sent in August 2014, which plaintiff concedes was absolutely in line with respect for his constitutional rights. It may be that the DOJ reacted differently to the two letters, but the DOJ is no longer a defendant in this case nor is its response determinative of whether the remaining defendants have engaged in § 1983 violations against plaintiff. Plaintiff himself says that he finds the 2014 letter to be "substantially more detailed than the 2012 version and it states unambiguously that the originally reported § 5250 commitment never occurred and never could have occurred because I had not ever had a certification hearing." Dkt. No. 52 ¶ 141. But the important fact here is that the 2012 letter, too, says plainly, "*Please note [plaintiff] did not have a Certification Review Hearing*." Dkt. No. 48-1, Ex. C (emphasis added).

The May 2012 letter also explained that (1) plaintiff was "placed on a 5250 [hold on] June 26, 1989," but (2) this status was changed to "voluntary status [on] June 29, 1999," and (3) plaintiff "did not have a Certification Review Hearing." Dkt. No. 48-1, Ex. C. The August 2014 letter simply spells out the conclusions that necessarily follow from the facts stated in the May 2012 letter: "It is my understanding under current guidelines, [plaintiff] would not be classified under Welfare and Institution Code §5250 for reporting purposes because no hearing occurred and the period of time that he was held pursuant to Welfare and Institutions Code § 5250,

United States District Court
Northern District of California

based on staff certification would not be reportable." *Id.*, Ex. D. Because the DOJ is no longer a defendant, the Court expresses no opinion on what the DOJ should or should not have done. But this much is clear: defendants communicated the same essential facts in May 2012 as they did in August 2014. They did not withhold the key facts that were necessary for making a correction to plaintiff's DOJ record relating to his hospitalization at Sempervirens in 1999, and these actions do not support a finding that defendants were deliberately indifferent to plaintiff's constitutional rights.

Plaintiff himself does not attack the August 2014 letter, and to the contrary, acknowledges its sufficiency. It cannot be, then, that defendants displayed a "deliberate indifference" to plaintiff's constitutional rights by sending a substantively identical version of that letter fifteen months earlier. Though it may be that the August 2014 letter makes more explicit the conclusions the DOJ should have drawn from the May 2012 letter, any failures in that regard can only be characterized as negligence, at worst, and cannot support a § 1983 claim. Plaintiff has also alleged that Dr. Starets-Foote in particular made express statements that she "does not care about [plaintiff's constitutional] rights," Dkt. No. 52 ¶ 44, and other statements to that effect, but those words, too, undoubtedly spoken in the heat of an argumentative conversation, show a lack of due care at most. That Dr. Starets-Foote stated that she does not care about plaintiff's Second Amendment rights certainly is not sufficient support for a § 1983 claim against her. What matters here is that the actions that were actually taken by the defendants were to send two letters to the DOJ, one in May 2012 and the other in August 2014, both of which are virtually identical in essential substance, and the latter of which plaintiff expressly concedes was what made the difference for restoring plaintiff's constitutional rights.

On this record, the Court finds as a matter of law that defendants Drs. George and Starets-Foote did not undermine or sabotage plaintiff's ability to purchase a firearm either intentionally or with deliberate indifference to his constitutional rights. Rather, while they may have made some statements to plaintiff in the heat of the moment that were angry and left him feeling attacked, the actual actions taken by defendants were in keeping with setting the record straight so that plaintiff would not be kept from being able to exercise his constitutional rights. Consequently, on

United States District Court
Northern District of California

plaintiff's § 1983 claim, the Court finds summary judgment warranted for all three remaining defendants.[1]

**II. STATE LAW CLAIMS**

This is a case in which the parties are not diverse, and plaintiff stakes his right to be in federal court on the basis of his 42 U.S.C. § 1983 claim, while invoking "the court's supplemental jurisdiction under 28 U.S.C. § 1367" over his remaining state law claims. Dkt. No. 1 ¶ 30. But having found it appropriate to grant summary judgment for defendants on the single federal claim in this case (the only claim over which the Court has original jurisdiction), the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). Although the case is not at an early stage, the state law claims have barely been litigated, let alone mentioned. They certainly have not been litigated to any degree that would make the Court's declination of supplemental jurisdiction over them unfair or inefficient.

The Court consequently finds it appropriate to dismiss plaintiff's state law claims without prejudice. *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) ("Dismissals for lack of jurisdiction 'should be . . . without prejudice so that a plaintiff may reassert his claims in a competent court.'").

**CONCLUSION**

The Court grants summary judgment for defendants on plaintiff's first claim under 42 U.S.C. § 1983. Plaintiff's remaining state law claims are dismissed without prejudice. The Clerk is directed to enter a judgment that is consistent with this order and close the file.

**IT IS SO ORDERED.**

Dated: July 13, 2015

JAMES DONATO
United States District Judge

[1] Plaintiff has made no independent allegations against the County of Humboldt with respect to any "policy or custom" apart from the actions taken by Drs. George and Starets-Foote, and because the Court finds no injury to plaintiff's constitutional rights in any event, the Court finds judgment for the county to be appropriate without a separate analysis under *Monell*, 436 U.S. 658. Similarly, because the Court finds summary judgment to be warranted on the § 1983 claim due to a lack of triable issue going to any conduct that deprived the plaintiff of a federal constitutional right, the Court finds it unnecessary to reach the statute of limitations issues that have been briefed by the parties.